# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NADINE BONDA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Defendant. | Case No. 1:15-cv-13419<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**WITH JURY DEMAND** |

Plaintiff Nadine Bonda ("Plaintiff"), individually and on behalf of all others similarly situated, through her undersigned counsel, files this Class Action Complaint (the "Complaint") against Volkswagen Group of America, Inc. ("VW" or "Defendant").  In support hereof, Plaintiff alleges upon personal knowledge as to herself, and, as to all other matters, upon information and belief, as follows:

## I.     NATURE OF ACTION

1.     This class action arises from VW's intentional conduct of selling to consumers almost 500,000 diesel Volkswagen and Audi brand vehicles in the United States that contained "defeat devices" that were designed and intended to operate the vehicles' full emissions control systems only when the car was undergoing its periodic emissions testing while the emissions control systems would then mostly shut down after the emissions testing, including during regular driving conditions.  This resulted in the vehicles emitting upwards of 40 times as much pollution into the air as is allowed under federal and state regulations.

2.      According to the United States Environmental Protection Agency ("EPA"), VW installed the defeat devices in diesel models of the model year 2009 to 2015 Jetta, Beetle and Golf vehicles, model year 2014 to 2015 Passat vehicles and model year 2009 to 2015 Audi A3 vehicles (the "Vehicles").  Federal and state investigations are continuing relating to VW's practices concerning the use of defeat devices in its diesel vehicles so additional vehicles and model years may also be affected and added to this list of Vehicles as the investigations continue to uncover additional facts.

3.      VW marketed the Vehicles as being clean, low emissions vehicles as well as having high fuel efficiency and performance.  As described herein, the Vehicles were not clean, low emissions vehicles, and the necessary corrections that VW will need to take to remedy the defeat devices will result in lower fuel efficiency and performance than VW had indicated the Vehicles would provide.

4.      Plaintiff brings this class action against VW on behalf of all persons and entities in the United States who are current or former purchasers/owners and/or lessees of the Vehicles, which include without limitation the diesel models of the model year 2009 to 2015 Jetta, Beetle and Golf vehicles, model year 2014 to 2015 Passat vehicles and model year 2009 to 2015 Audi A3 vehicles.  Plaintiff further brings this class action against VW on behalf of all person and entities who purchased and/or leased a Vehicle, which include without limitation the diesel models of the model year 2009 to 2015 Jetta, Beetle and Golf vehicles, model year 2014 to 2015 Passat vehicles and model year 2009 to 2015 Audi A3 vehicles, in Massachusetts.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because Plaintiff and a vast majority of Class members are of diverse citizenship from Defendants and the

aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, *et seq.* because one or more of the Vehicles at issue were purchased or leased in this District, substantial events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendant regularly transacts business in this District and is subject to personal jurisdiction in this District.

7.      VW also directly and through its agents regularly transacts business and otherwise derives substantial revenue in Massachusetts and the United States. Defendant also conducts continuous and systematic economic activities in Massachusetts and the United States. VW intentionally and purposefully placed the Vehicles in the stream of commerce in Massachusetts and the United States.  Subjecting VW to in personam jurisdiction in the Commonwealth of Massachusetts does not violate the defendants' due process rights and comports with requirements of fair play and substantial justice.

### III.      PARTIES

8.      Plaintiff is a resident of Cambridge, Massachusetts.  In 2010, Plaintiff purchased a 2010 Audi A3 TDI vehicle from Bernardi Audi Natick in Natick, Massachusetts.  At the time of her purchase, Plaintiff bought her 2010 Audi A3 TDI vehicle under her then-married name, Nadine Binkley.

9.      VW is a duly organized New Jersey corporation doing business in every U.S. state and the District of Columbia, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171 and its Engineering and Environmental Office at 3800 Hamlin Road, Auburn Hills, Michigan 48326. At all relevant times, VW imported, distributed, manufactured, sold, leased and warranted Volkswagen and Audi motor vehicles including the Vehicles at issue in this action.  Upon information and belief, VW designed the Vehicles' diesel

engines and engine control systems in the Vehicles, which included the inclusion of the "defeat device" at issue.   VW also developed and distributed the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Vehicles.

## IV.   SUBSTANTIVE ALLEGATIONS

10.   During all relevant periods, VW has marketed its diesel engine vehicles to be low emissions, fuel efficient vehicles.   As a result of its marketing efforts, VW has become the largest seller of diesel cars in the United States.

11.   VW's marketing of its diesel engine Vehicles has always been aimed at promoting its cars to be "clean" and environmentally-responsible vehicles even tagging and marketing the TDI (turbocharged direct injection) diesel engines as "Clean Diesel" vehicles.

12.   VW has charged consumers a premium for the Vehicles, which it has continually promoted as, among other things, "clean" and "green".   The premium charged for the Clean Diesel benefits ranged from at least $1,000 to $7,000, depending on the model and trim of the Vehicle.   The chart below provides an overview of the premium that VW charged for the Vehicles compared to their VW gasoline-run counterparts:

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

13.   On September 18, 2015, the EPA issued a Notice of Violation to VW, as well as its parent company, stating the EPA had determined that VW had manufactured and installed defeat devices in the Vehicles that "bypass, defeat, or render inoperative elements of the vehicles' emission controls system that exists to comply with the Clean Air Act ("CAA")

emission standards", thus putting VW in direct violation of provisions of the CAA.  The EPA informed VW that the defeat devices caused the Vehicles to "not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them."  As a result, VW violated the CAA "by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the forgoing acts."

14.    As detailed in the EPA's Notice of Violation, VW had utilized complex software in the Vehicles so that the Vehicles could detect when the Vehicle was undergoing a periodic emissions test and would then turn its full emissions controls on during the test.  Upon completion of the emissions test, the Vehicles' emissions controls would primarily stop working, causing the cars,  including during normal operation, to emit nitrogen oxides at up to 40 times the levels allowed under federal laws and regulations.  As outlined in the EPA's Notice of Violation, the software developed and used by VW constitutes a "defeat device" as defined by and in violation of the CAA.

15.    As the New York Times reported, VW's action were first noticed by a research group, the International Council on Clean Transportation ("ICCT"), when it discovered discrepancies between emissions tests in the laboratory and road tests conducted on the Vehicles.  The ICCT brought its findings to the attention of the EPA, which instituted its own additional investigation that lead to the discovery of the defeat device VW utilized on the Vehicles.  The EPA then issued its Notice of Violation to VW.

16.    The Department of Justice has begun a criminal probe into VW's actions. Congress has also indicated that the House of Representatives' Oversight and Investigations Subcommittee would hold a hearing on VW's actions in the coming weeks.

17.     After receipt of the EPA's Notice of Violation, VW admitted that it had knowingly utilized defeat devices in the Vehicles and mislead consumers and authorities.  VW's chief executive, Michael Horn, stated that "[o]ur company was dishonest, with the EPA and the California Air Resources board, and with all of you and in my German words, we have totally screwed up."   The chief executive of VW's parent company also acknowledged VW's knowing deception and use of defeat devices on the Vehicles, claiming that the company "was deeply sorry that we have broken the trust of our customers."

18.     Although the EPA has ordered VW to recall all of the Vehicles and bring them into compliance with emission requirements, Plaintiff and the class members have and will continue to be injured by VW's practices.  Any efforts VW takes to bring the Vehicles into compliance with federal and state emissions standards will result in a reduction in the Vehicles' fuel efficiency and performance, thus diminishing the performance of the Vehicles as marketed and warranted by VW.

19.     As set forth in a New York Times article on September 18, 2015:

Experts in automotive technology said that disengaging the pollution controls on a diesel-fueled car can yield better performance, including increased torque and acceleration.

"When the pollution controls are functioning on these vehicles, there's a trade-off between performance and emissions," said Drew Kodjak, executive director of the International Council on Clean Transportation, a research group. "This is cutting corners."

20.     Plaintiff and the class members also have suffered and will continue to suffer injury through the reduction in the value of their Vehicles, resulting from VW's actions.  As set forth above, VW charged Plaintiff and the class members a premium for their "Clean Diesel" Vehicles.  In addition, any fix by VW will inevitably reduce the Vehicles' fuel efficiency, resulting in Plaintiff and the class members paying more for fuel over the life of the Vehicles.

21.     Plaintiff and the class members would not have purchased their Vehicles and/or would have paid significantly less for their Vehicles than they did had they been made aware of VW's actions described herein and the true nature of their Vehicles' performance.

## V. **ALL CLAIMS HAVE BEEN TIMELY FILED**

22.     Plaintiff and the class members did not know and could not have known, through the exercise of reasonable diligence, about VW's deceptive actions regarding the Vehicles, including its use of defeat devices.  In fact, the truth disclosed to date has only become known following investigations, involving laboratory and road testing, conducted by the ICCT and the EPA.  Only after these investigations did it become know that VW had utilized sophisticated software to defeat emissions testing on the Vehicles.

23.     As alleged herein, VW has admitted that it had been dishonest with consumers and concealed the true facts about the Vehicles, including specifically VW's use of defeat devices and their effect on the Vehicles.  The allegations make clear that VW purposely hid the truth about the Vehicles from consumers as well as regulators.

24.     Within any of the applicable statutes of limitation, Plaintiff and the class members could not have discovered with reasonable diligence VW's conduct alleged herein.

25.     VW also knew that the Vehicles contained defeat devices that, among other things, caused the Vehicles not to comply with federal and state emissions requirements and intentionally concealed that material information from Plaintiff and the general public, while continually marketing the Vehicles as, among other things, "clean", "green", low-emissions and having high fuel economy.

26.     As a direct and proximate result of VW's conduct, Plaintiff and the class members sustained damages as set forth herein.  Indeed, VW's concealment caused a delay in

discovering the performance of its Vehicles' diesel engines.

27.     As a further direct and proximate result of VW's conduct, Plaintiff and the class members were unable to discover their injuries or learn of their causes of action.  Consequently, under the doctrine of equitable tolling, the statute of limitations for each claim alleged in this complaint did not begin to run until the truth was disclosed to the public on, at the earliest, September 18, 2015.

## VI.     CLASS ALLEGATIONS

28.     Plaintiff brings this action individually and on behalf of the following nationwide class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3):

> All persons or entities in the United States who are current or former purchasers/owners and/or lessees of a Vehicle, including without limitation the diesel models of the model year 2009 to 2015 Jetta, Beetle and Golf vehicles, model year 2014 to 2015 Passat vehicles and model year 2009 to 2015 Audi A3 vehicles (the "Class.")

29.     Alternatively, or in addition to the nationwide Class claims, Plaintiff brings these claims under Fed. R. Civ. P. 23 on behalf of the following Massachusetts class:

> All persons or entities that purchased and/or leased a Vehicle, including without limitation the diesel models of the model year 2009 to 2015 Jetta, Beetle and Golf vehicles, model year 2014 to 2015 Passat vehicles and model year 2009 to 2015 Audi A3 vehicles, in the Commonwealth of Massachusetts (the "Massachusetts Class").

Together, the Class and the Massachusetts Class are referred to herein as the "Classes."

30.     Excluded from the Classes are any claims by or on behalf of individuals who have personal injury claims resulting from the defeat device in the Clean Diesel system. Also excluded from the Classes are VW and its parent, subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; and the judge to whom this case is assigned and his/her immediate family and staff.

31.    Plaintiff reserves the right to redefine the Classes prior to class certification.

32.    The members of the Classes are so numerous that joinder of all members is impracticable.  While the precise number of Class members is unknown at this time, it may be determined from the records maintained by VW and/or its dealers.  Plaintiff believes that the Class numbers in the hundreds of thousands and the Massachusetts Class likely numbers in at least the thousands.

33.    Plaintiff's claims are typical of the claims of the members of the Classes, as Plaintiff and all Class members were similarly affected by VW's wrongful conduct as set forth herein.  Plaintiff and each Class member purchased and/or leased a Vehicle that had a defeat device.  Plaintiff and the Classes have sustained similar damages, resulting from VW's wrongful conduct complained of herein, including, without limitation the diminution in value of their Vehicles and increased costs, including increased fuel costs.

34.    Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has retained counsel competent experienced in class action and consumer fraud litigation.  Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes, and have the financial resources to do so.  Plaintiff and her counsel are aware of no conflicts of interest between Plaintiff and other members of the Classes.

35.    There are numerous questions of fact and law common to Plaintiff and the Classes, and those questions predominate over any questions that may affect individual Class members, including, without limitation:

     a.   Whether VW engaged in the conduct alleged herein.

     b.   Whether VW marketed, designed, advertised, distributed, leased, sold, or otherwise placed the Vehicles into the stream of commerce in the United States;

    c.   Whether the Vehicles' Clean Diesel engine system in the Vehicles contains a defect in that it does not comply with federal and state emissions requirements;

    d.   Whether the Vehicles' Clean Diesel engine systems can be made to comply with federal and state emissions standards without substantially degrading the performance and/or fuel efficiency of the Vehicles;

    e.   Whether VW breached its express and implied warranties in that the Vehicles were defective with respect to the use of the defeat devices to circumvent federal and state emissions requirements;

    f.   Whether Plaintiff and the members of the Classes overpaid for their Vehicles;

    g.   Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Classes is impracticable. Given the common conduct perpetrated by VW through the uniform use of the defeat devices in the Vehicles, and the uniform misrepresentations and omissions by VW to the Classes, Plaintiff is not aware of any difficulties in managing the action as a class action.

37.    VW has acted on grounds that apply to the entirety of each of the Classes.

38.    The prosecution of separate actions can create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which could establish incompatible standards of conduct for VW.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it difficult and oftentimes uneconomical for Class members to individually redress the wrongs done to them.

39.     Notice to the Classes may be accomplished cheaply, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written and/or published notices, and based on VW's own records and the records of its dealers.

## VII.   CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
**(On Behalf of All Classes)**

40.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

41.     For good and valuable consideration given, VW entered express or implied contracts for the sale of goods with Plaintiff and the Classes and their successors in interest which contracts include a covenant of good faith and fair dealing.

42.     VW's misrepresentations and omissions alleged herein, including VW's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other members of the Classes to make their purchases or leases of their Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Vehicles, would not have purchased or leased these Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the Clean Diesel engine system and the "defeat device." Accordingly, Plaintiff and the other Class members overpaid for their Vehicles and did not receive the benefit of their bargain.

43.     Each and every sale or lease of a Vehicle constitutes a contract between VW and the purchaser or lessee.  VW breached these contracts by selling or leasing Plaintiff and the other members of the Classes defective Vehicles and by misrepresenting or failing to disclose

the existence of the defeat device and/or defective design, including information known to VW, rendering each Vehicle less safe and unable to satisfy emissions standards, and thus less valuable than vehicles that are not equipped with defeat devices.

44.     As a direct and proximate result of the aforementioned wrongful conduct committed by VW, Plaintiff and the Classes have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.  Plaintiff and the Class members are entitled to damages and injunctive and declaratory relief as set forth below.

45.     In the event that the contracts at issue do not provide an adequate remedy at law, Plaintiff and the members of the Classes are entitled, in the alternative, to equitable relief, including restitution, under the doctrine of unjust enrichment, for having conferred a benefit upon VW, which was accepted, who then failed to provide the bargained-for non-defective Vehicles, rendering it unjust for VW to retain such benefit.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of All Classes)**

46.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

47.     VW provided an express warranty at the time of sale and/or lease of the Vehicles.

48.     VW made numerous representations and promises to Plaintiff and members of the Classes regarding the performance and emission controls of its diesel Vehicles.

49.     VW knew that its representations and promises were false. VW was aware that it had installed defeat devices in the Vehicles it sold to Plaintiff and the members of the Classes.

50.     Plaintiff and the members of the Classes reasonably relied on VW's representations in purchasing and/or leasing the Vehicles.  The Vehicles, however, did not

perform as warranted.  Unknown to Plaintiff and the members of the Classes, the Vehicles included defeat devices that caused their emission systems not to perform as warranted and represented by VW.  Accordingly, VW breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiff and the members of the Classes.

51.     Plaintiff and the Classes have suffered direct and consequential damages due to VW's breach of its express warranties because the Vehicles were not merchantable or fit for their particular purpose and have resulted in damages, which continue and will continue into the future in an amount to be proven at trial.  Plaintiff and the Classes are entitled to damages and injunctive relief as set forth below.

## COUNT III
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of All Classes)

52.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

53.     VW made numerous representations and promises to Plaintiff and the members of the Classes regarding the functionality of the Vehicle's "Clean Diesel" engine.

54.     Plaintiff and the members of the Classes reasonably relied on VW's representations in purchasing the Vehicles.

55.     As alleged herein, VW knew that its representations and promises regarding its Vehicles' Clean Diesel engines were not true.

56.     When Plaintiff and the Class members purchased VW's Clean Diesel Vehicles, they did not conform to the representations and promises made in VW's promotional materials, including that the Vehicles were designed to meet the most demanding environmental standards. Instead, as alleged herein, the Vehicles were designed to deceive and circumvent federal and

state emissions standards, and the Vehicles emitted far higher levels of pollution than indicated.

57.    Accordingly, the Vehicles failed to conform to VW's implied warranty regarding their functionality.

58.    As a direct and proximate result of VW's false and misleading representations and warranties, Plaintiff and the Classes suffered significant injury when VW sold them Vehicles that, as alleged herein, are worth less than the price Plaintiff and the Classes paid for them.   Plaintiffs and the Classes are entitled to damages and injunctive relief as set forth below.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of All Classes)**

59.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs.

60.    Plaintiff and the Classes have conferred substantial benefits on VW by purchasing and/or leasing the Vehicles, and VW knowingly and willingly accepted and enjoyed these benefits.

61.    VW knew that the payments rendered by Plaintiff and the Classes were given and received with the expectation that the Vehicles would perform as represented and warranted. For VW to retain the benefit of the payments under these circumstances is inequitable.

62.    VW, through its deliberate misrepresentations or omissions in connection with its, among other things, advertising, marketing, promotion, and sale of the Vehicles, reaped benefits, which resulted in VW's wrongful receipt of monies received in connection with the Vehicles.

63.    Equity demands disgorgement of VW's ill-gotten gains.  VW will be unjustly enriched unless it is ordered to disgorge the monies it received in connection with its sale of the

Vehicles for the benefit of Plaintiff and the Classes.

64.    As a direct and proximate cause of VW's wrongful conduct and unjust enrichment, Plaintiff and the Classes are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by VW in connection with its sale of the Vehicles.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, requests that the Court grant the following relief:

A.    Enter an order certifying the proposed Classes, designating Plaintiff as the class representative, and appointing the undersigned counsel as class counsel;

B.    Award economic, compensatory, statutory, exemplary, and punitive damages in favor of Plaintiff and the Classes against VW for all damages sustained as a result of VW's wrongdoing in an amount to be determined at trial, including interest thereon;

C.    Require VW to account for, disgorge and/or pay damages to Plaintiff and the Classes in the amounts by which VW was unjustly enriched due to its wrongful conduct;

D.    An order temporarily and permanently enjoining VW from continuing the wrongful conduct alleged herein;

E.    Award pre-judgment and post-judgment interest at the maximum rate allowable by law;

F.    Award the Classes costs and attorneys' fees against VW as allowed by law, and/or awarding Class counsel attorneys' fee from the common fund created hereby; and

G.    Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Classes, hereby demand a trial by jury on all issues so triable.

Dated:  September 22, 2015

By her attorneys,

**Thomas G. Shapiro**
Thomas G. Shapiro BBO#454680
Adam M. Stewart BBO# 661090
Shapiro Haber & Urmy LLP
Seaport East
Two Seaport Lane
Boston, Massachusetts 02210
617-439-3939
617-439-0134 ((fax)
tshapiro@shulaw.com
astewart@shulaw.com

*Counsel for the Plaintiff and Putative Classes*